No. 14-55580

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CALIFORNIA SEA URCHIN COMMISSION; CALIFORNIA ABALONE
ASSOCIATION; CALIFORNIA LOBSTER AND TRAP FISHERMEN'S
ASSOCIATION; COMMERCIAL FISHERMEN OF SANTA BARBARA,

Plaintiffs - Appellants,

v.

RACHEL JACOBSON, in her official capacity as Acting Assistant
Secretary for Fish & Wildlife & Parks, Department of Interior; DANIEL M.
ASHE, in his official capacity as Director of the United States Fish &
Wildlife Service; UNITED STATES FISH & WILDLIFE SERVICE,

Defendants - Appellees,

and

FRIENDS OF THE SEA OTTER; HUMANE SOCIETY
OF THE UNITED STATES; DEFENDERS OF WILDLIFE;
CENTER FOR BIOLOGICAL DIVERSITY; THE OTTER PROJECT;
ENVIRONMENTAL DEFENSE CENTER; LOS ANGELES WATERKEEPER,

Intervenor-Defendants-Appellees.

On Appeal from the United States District Court
for the Central District of California
Honorable Dolly M. Gee, District Judge

**APPELLANTS' OPENING BRIEF**

DAMIEN M. SCHIFF
JONATHAN WOOD
  Pacific Legal Foundation
  930 G Street
  Sacramento, California 95814
  Telephone:  (916) 419-7111
  Facsimile:  (916) 419-7747
Counsel for Plaintiffs - Appellants

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellants state that they are not publicly held corporations, do not issue stocks, and do not have parent corporations.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.  Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.  Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         1.  Public Law 99-625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         2.  The Establishment and Termination of the Management Zone . . . . . 5

     C.  Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

  I.  APPELLANTS' CHALLENGE TO THE 2012 RULE
      TERMINATING THE MANAGEMENT ZONE IS TIMELY . . . . . . . . . . 8

 II.  *SHINY ROCK* AND *WIND RIVER* DO NOT SUPPORT DISMISSAL . . . . 9

     A.  The Fishermen Do Not Ask the Court To
        Waive the Statute of Limitations Period . . . . . . . . . . . . . . . . . . . . 11

**Page**

B. *Wind River* Does Not Limit the Types of Final Agency
Actions Which May Be Challenged Under the APA . . . . . . . . . . . . . . . 13

1. *Wind River* Does Not Support the Service's
Effort To Restrict the Types of Final Agency
Actions Reviewable Under the APA . . . . . . . . . . . . . . . . . . . . . . . . 14

2. The District Court's Interpretation of *Wind River*
Is Inconsistent with the Text of the APA . . . . . . . . . . . . . . . . . . . . 17

3. The District Court's Interpretation Is Also
Inconsistent with the Presumption That Agency
Actions Are Subject to Judicial Review Under the APA . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bennett v. Spear*, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cedars-Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126 (9th Cir. 1999) . . . . . . . . 13, 16

*Center for Biological Diversity v. Salazar*,
  695 F.3d 893 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 13-14

*Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*,
  112 F.3d 1283 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
  593 F.3d 923 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jersey Heights Neighborhood Ass'n v. Glendening*,
  174 F.3d 180 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Nat'l Min. Ass'n v. U.S. Dep't of Interior*,
  70 F.3d 1345 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122 (9th Cir. 2006) . . . . . . . . . . . 6-7

*Oppenheim v. Campbell*, 571 F.2d 660 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . 11, 15

*Oregon Trollers Association v. Gutierrez*,
  452 F.3d 1104 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Sackett v. E.P.A.*, 132 S. Ct. 1367 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 19

*Shaughnessy v. Pedreiro*, 349 U.S. 48 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Page**

*Shiny Rock Mining Corp. v. United States*,
  825 F.2d 216 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Shiny Rock Mining Corp. v. United States*,
  906 F.2d 1362 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10-12

*Wind River Mining Corp. v. United States*,
  946 F.2d 710 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 11, 14-15

**Statutes**

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

  § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

  § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

  § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

  § 2401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

  § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 7, 11, 17

30 U.S.C. § 1276(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Pub. L. No. 99-625, 100 Stat. 3500 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

**Rules**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 54(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Page**

## Miscellaneous

52 Fed. Reg. 29,754 (Aug. 11, 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 20

76 Fed. Reg. 53,381 (Aug. 26, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

77 Fed. Reg. 75,266 (Dec. 19, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

## STATEMENT OF SUBJECT MATTER JURISDICTION

This appeal arises from the district court's judgment dismissing Appellants' complaint as time-barred. Excerpts of Record (ER) at 4-16. The district court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 702 (judicial review of federal agency action). The district court's entry of judgment on March 27, 2014, dismissing the complaint, is a final judgment under Rule 54(a) of the Federal Rules of Civil Procedure. Appellants filed a Notice of Appeal on April 11, 2014, ER at 1, within sixty days of the district court's entry of judgment. The statutory basis for this Court's appellate jurisdiction is 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

A lawsuit under the Administrative Procedure Act is timely if brought within six years after the right of action first accrues. 28 U.S.C. § 2401(a); *see Wind River Mining Corp. v. United States*, 946 F.2d 710, 712-13 (9th Cir. 1991). Is such a lawsuit nevertheless time-barred if the grounds advanced for challenging the agency action could also have been advanced against older agency actions, a direct challenge to which would now be time-barred?

## STATUTORY PROVISIONS

5 U.S.C. § 706 states:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1)     compel agency action unlawfully withheld or unreasonably delayed; and

(2)     hold unlawful and set aside agency action, findings, and conclusions found to be—

(A)     arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)     contrary to constitutional right, power, privilege, or immunity;

(C)     in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D)     without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

28 U.S.C. § 2401(a) states:

(a) Except as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

## STATEMENT OF THE CASE

**A. Introduction**

Appellants California Sea Urchin Commission, California Abalone Association, California Lobster and Trap Fishermen's Association, and Commercial Fishermen of Santa Barbara (fishermen) are a state government entity and membership organizations representing fishermen. They are organized to promote a sustainable fishery in which their members can pursue their livelihoods, which are threatened by the U.S. Fish and Wildlife Service's (Service) December 19, 2012, decision to terminate Southern California's sea otter management zone. The fishermen, in this action, seek to prevent the Service from violating a compromise struck by Congress, which recognized that otter expansion has costs. It threatens an ecosystem and industry and, unless the protections that Congress specifically required are maintained,

- 3 -

people who are merely pursuing their lawful occupation could face criminal punishment for guiltless acts.

The Service's adoption of this final rule was a final agency action that exceeded its statutory authority in violation of the Administrative Procedure Act (APA). The statute of limitations for this claim is six years. Less than eight months after the rule became final, the fisherman challenged the rule as exceeding the Service's statutory jurisdiction. Because the complaint was filed less than six years after the rule became final, the dismissal should be overruled.

## B. Background

### 1. Public Law 99-625

On November 7, 1986, Congress enacted Public Law 99-625, 100 Stat. 3500, to allow the Service to return sea otters to Southern California, while avoiding some of the negative effects to the fishery and fishermen. Specifically, Congress authorized the Service to develop a relocation and management plan for the sea otter that must include a "translocation zone" where the relocated population would reside and a "management zone" surrounding it. *Id*. § 1(b)(3)-(4). The Service was required to use all feasible non-lethal means to capture and remove otters from the management zone in order "to prevent, to the maximum extent feasible, conflict with other fishery resources." *Id*. § 1(b)(4)(B)(i)-(ii). Most importantly to the fishermen, Congress expressly exempted otherwise lawful activities in the management zone, including

fishing, from the criminal provisions of the Endangered Species Act and the Marine Mammal Protection Act. *Id.* § 1(c)(2). If the Service elected to exercise the discretionary authority to create a translocation plan, Congress provided that the Service *shall implement* the plan, including the conditions that Congress imposed on the Service's authority. *Id.* § 1(d).

### 2. The Establishment and Termination of the Management Zone

The Service exercised this authority on August 11, 1987, in a regulation that established both zones and exempted otherwise lawful activities from the prohibitions of the Endangered Species Act and Marine Mammal Protection Act. *See* 52 Fed. Reg. 29,754. The regulation further provided that the program would generally be considered a failure if certain criteria were met and, if they were, the Service might terminate the program. *Id.* at 29,784.

The Service relocated otters to San Nicolas Island from 1987 through 1990. ER at 31 ¶ 37. Although it initially complied with its obligation to remove otters from the management zone, the Service ceased doing so in 1993 when it concluded there were no non-lethal means available. *Id.* at 31 ¶ 39. However, it continued to respect the exemption from Endangered Species Act and Marine Mammal Protection Act liability. *Id.* at 32 ¶ 44.

In 2009, The Otter Project and Environmental Defense Center sued the Service, claiming that it had a mandatory duty to consider whether the failure criteria were met

and, if they were, terminate the exemption. ER at 32 ¶ 48. As a result of that lawsuit, the Service proposed to terminate the plan and the management zone on August 26, 2011. 76 Fed. Reg. 53,381. The Service finalized this proposed rule on December 19, 2012, terminating the plan, its obligation to remove sea otters from the management zone if non-lethal means become available, and exposing fishermen to criminal prosecution under the Endangered Species and Marine Mammal Protection Acts. 77 Fed. Reg. 75,266.

## C. Procedural History

The fishermen filed this APA challenge to the 2012 Rule on July 31, 2013, asserting that it exceeds the Service's authority under Public Law No. 99-625, which gives the Service no authority to terminate the protections in the management zone. *See* ER at 21. The Service moved to dismiss the case on statute of limitations grounds. *See* ER at 17. On March 3, 2014, the district court granted the motion to dismiss, but gave 21 days to file an amended complaint. *See* ER at 15-16. Once the time to amend had passed, the court entered judgment dismissing the complaint. ER at 4. This appeal followed. ER at 1.

## STANDARD OF REVIEW

A district court's dismissal on statute of limitations grounds is reviewed by this Court de novo. *See Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1127 (9th Cir.

2006). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is only appropriate if the complaint fails to state a claim upon which relief can be granted.

## SUMMARY OF ARGUMENT

To determine whether a party has stated a claim under the APA, the court must resolve two questions. First, does the party challenge a "final agency action" on one of the grounds enumerated in the APA? 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (defining a final agency action as the culmination of an agency decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow' " (citation omitted); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir. 2010). Second, was the claim brought within six years of the challenged agency action becoming final? 28 U.S.C. § 2401(a). Here, the answer to both questions is yes. The fishermen challenged a final agency action—the 2012 Rule—as exceeding the Service's statutory authority less than eight months after it was adopted. Therefore, the dismissal should be overruled.

The court below dismissed this claim because, if the fishermen are right, the Service may have previously exceeded its statutory authority in adopting the 1987 Regulation. ER at 5-16. It construed this Court's decision in *Wind River Mining Corp. v. United States* to foreclose judicial review in such circumstances except when the challenged final agency action is the denial of a petition or the enforcement of an

illegal regulation. ER at 13-15; 946 F.2d 710 (9th Cir. 1991). This interpretation is contrary to this Court's precedent, the text of the APA, and the presumption that agency action is subject to judicial review. *Sackett v. E.P.A.*, 132 S. Ct. 1367, 1374 (2012) (presumption of judicial review); *Center for Biological Diversity v. Salazar*, 695 F.3d 893, 904-05 (9th Cir. 2012) (holding that a challenge to a rule that incorporated a twenty-year-old regulatory definition, on the grounds that both exceed the agency's authority, was not barred by the statute of limitations).

## ARGUMENT

## I

## APPELLANTS' CHALLENGE
## TO THE 2012 RULE TERMINATING
## THE MANAGEMENT ZONE IS TIMELY

A straightforward application of the Administrative Procedure Act and the statute of limitations provision demonstrates that this claim was timely. Where the final agency action is a rule-making, the statute of limitations period starts to run when the final rule is adopted and published in the Federal Register. *See Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1363 (9th Cir. 1990).

Here, the fishermen challenge a rule that exceeds the Service's authority under Public Law No. 99-625, by terminating protections for Southern California's fisheries and fishermen. ER at 21-22 ¶ 1. The fishermen allege that this violation occurred in 2012 when the Service terminated the management zone, purporting to relieve itself

- 8 -

of its obligations and removing the fishermen's exemption from criminal prosecution. *Id.* ("In December of last year, the Service violated this Congressionally authorized compromise by ending the management zone."). The fishermen requested the invalidation of the 2012 rule and a return to the status quo ante. *Id.* ("Plaintiffs seek a declaration that the Service's termination of the otter management zone is illegal, and an injunction requiring the Service to continue to observe and abide by the Congressionally mandated compromise."). The rule they challenge was adopted and published in the Federal Register on December 19, 2012. 77 Fed. Reg. 75,266. Appellants filed their complaint on July 31, 2013, less than eight months later. ER at 21. Therefore, the dismissal of their action was improper.

In dismissing the complaint, the court below construed this case as a challenge to the 1987 Regulation and not the 2012 Rule. The complaint does not challenge the 1987 Regulation. That regulation is only relevant in that it is the Service's purported authorization for the 2012 Rule. *See* ER at 37 ¶ 71. Rather, the relevant final agency action was the termination decision itself. *Id.* at 21-22 ¶ 1. As the fishermen contend that Public Law 99-625 forbids the Service from terminating the exemption from the Endangered Species and Marine Mammal Protection Acts, it is the 2012 Rule—which terminated these protections—that they challenge as exceeding the Service's authority.

## II

## *SHINY ROCK* AND *WIND RIVER* DO NOT SUPPORT DISMISSAL

Rather than asking whether the fishermen filed their APA challenge to a final agency action in time, the court below addressed two unrelated arguments. First, it held that the statute of limitations can run against a party before she is injured and established standing to challenge a final agency action. ER at 11. That legal proposition is correct under *Shiny Rock Mining Corp. v. United States*, but it has no relevance here because the fishermen do not ask that the statute of limitations be waived for their claim. *See* 906 F.2d at 1365. As explained above, the fishermen filed a timely APA challenge to the 2012 Rule.

Second, the Service and the court below construe this Court's decision in *Wind River Mining Corp. v. United States* to narrow the types of final agency actions that are reviewable under the APA to the specific examples enumerated in that decision, *i.e.* enforcement actions and petition denials. ER at 13-15. That interpretation of *Wind River* is inconsistent with *Center for Biological Diversity v. Salazar*, in which this Court recognized that a final rule could be challenged as exceeding an agency's authority despite its reliance on an earlier rule that could not be directly challenged. 695 F.3d at 904-05. Additionally, this interpretation is inconsistent with *Wind River*'s reasoning, the text of the APA, and the presumption of reviewability under the APA.

- 10 -

*See* 28 U.S.C. § 2401(a); *Sackett*, 132 S. Ct. at 1374 (presumption of judicial review under the APA); *Wind River*, 946 F.2d at 715 (adopting the reasoning of *Oppenheim v. Campbell*, 571 F.2d 660 (D.C. Cir. 1978)).

### A.  The Fishermen Do Not Ask the Court To Waive the Statute of Limitations Period

This Court has held that a statute of limitations could run against a plaintiff even if it was not injured, and therefore did not have standing to sue, until more than six years after the agency action became final.  *Shiny Rock*, 906 F.2d at 1365.  In *Shiny Rock*, a mining company filed a procedural challenge to a 1964 order which withdrew federal lands from mineral extraction.  *Id*. at 1363-64; *see also* 825 F.2d 216 (9th Cir. 1987).  The company filed its challenge more than 15 years after the order became final and the government moved to dismiss the challenge as too late.  906 F.2d at 1363-64.  The mining company, which had only recently acquired the property, replied that the statute of limitations period shouldn't begin to run until the plaintiff is injured and acquires standing.  *Id*. at 1364-66.  Reasoning that the mining company's argument would render statutes of limitations meaningless, this Court held that the statute of limitations period runs from when the agency action becomes final and is published in the Federal Register.  *Id*. at 1365-66.

The fishermen do not challenge *Shiny Rock*.  Nor is their case controlled by it because they do not ask this Court to waive the statute of limitations period.  Unlike

that case, the fishermen filed their complaint within six years of when the challenged agency action became final. *Compare id*. at 1363-64 *with* ER at 21-22 ¶ 1. As the court below recognized, they were not injured until the 2012 Rule was adopted. ER at 11. But they do not argue that the statute of limitations should run from any point other than when the challenged final agency action—the 2012 rule—became final.

Furthermore, *Shiny Rock* demonstrates why the fishermen's claim is timely. In addition to the direct challenge to the 20-year-old regulation, the mining company also challenged a more recent final agency action that had relied on the regulation. 825 F.2d at 218-20. In the first appeal, this Court resolved the claims against the recent final agency action—the denial of the mining claim application—on the merits. *Id*. at 218-19. It remanded a procedural challenge to the 20-year-old rule. *Id*. at 219-20. The final agency action for the remanded claim was the adoption of the 20-year-old rule because that was the only alleged APA violation in the claim. *Id*. It was this second claim that failed on statute of limitations grounds. 906 F.2d at 1364.

This challenge is analogous to the claim that this Court resolved on the merits, not the one that was time-barred. *Shiny Rock* would only be relevant if the fishermen did not allege that the 2012 Rule violates the APA. It would apply, for example, if they challenged the 1987 Regulation as exceeding the Service's authority, seeking its rescission. Or it would apply if they challenged the 2012 Rule solely on the grounds that the 1987 Regulation was procedurally defective, because the only agency action

that would violate the APA in such a claim would be the adoption of the 1987 Regulation. *See Cedars-Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126, 1129 (9th Cir. 1999) (rejecting, on statute of limitations grounds, a challenge to the application of an older regulation solely because the regulation's adoption was procedurally defective). But *Shiny Rock*'s statute of limitations analysis does not require dismissal here, where the fishermen have filed a timely challenge to an agency action as exceeding an agency's authority.

## B. *Wind River* Does Not Limit the Types of Final Agency Actions Which May Be Challenged Under the APA

No decision from this Court supports the Service's theory that *Wind River* restricts the final agency actions that can be challenged under the APA. To the contrary, this interpretation is directly contradicted by this Court's recent decision in *Center for Biological Diversity*. 695 F.3d at 904-05. In that case, an environmental group brought a timely APA challenge to a 2008 regulation that incorporated a 1983 regulatory definition. *Id*. The group alleged that the 2008 regulation exceeded the agency's authority on a theory that would mean that the 1983 definition also exceeded the agency's authority. *Id*. The Service argued that the case should be dismissed because the period for challenging the 1983 definition directly had run. *Id*. This Court rejected that argument, the same one made here, because "[a]lthough Plaintiffs cannot challenge facially the 1983 regulatory definition, they can challenge the

Service's alleged application of that definition in [the 2008 regulations]." *Id*. at 904. Notably, the challenged 2008 regulation, like the 2012 Rule at issue here, did not fall within either of *Wind River*'s exceptions. *See id.*

Though this Court decided, in a separate section of the opinion, that the Service had not faithfully applied the 1983 definition in the 2008 action, that fact played no role in the Court's decision to reject the statute of limitations defense. This Court made that clear when it explained that, in light of its rejection of the statute of limitations defense, it "must determine whether the Service applied the 1983 regulation definition [in which case the plaintiffs would win on the merits], as opposed to some other permissible definition, in promulgating the contested 2008 incidental take regulations [in which case the Service would win on the merits]." *Id*. at 904-05.

Additionally, the Service's interpretation of *Wind River* is inconsistent with the Court's reasoning in that case, the text of the APA, and the presumption of judicial review under the APA.

## 1. *Wind River* Does Not Support the Service's Effort To Restrict the Types of Final Agency Actions Reviewable Under the APA

In *Wind River*, a mining company challenged a 10-year-old rule precluding ore extraction on federal lands. 946 F.2d at 711-12. The Court acknowledged that a direct challenge to the ten-year-old rule was barred by the statute of limitations. *Id*.

at 714. But, noting that *Wind River*'s claim was that the earlier rule exceeded the agency's statutory authority, this Court recognized that subsequent final agency actions that applied the rule would also exceed the agency's statutory authority. *Id*. at 715. The Court held "that a substantive challenge to an agency's decision alleging lack of agency authority *may* be brought within six years of the agency's application of that decision to the specific challenger." *Id*. at 716 (emphasis added). Importantly, this Court rejected the statute of limitations argument in that case. *See id*. It did not hold, nor did it have any opportunity to consider, whether final agency actions that exceed an agency's statutory authority, where an agency has previously exceeded that authority, cannot be challenged except in this circumstance.

The fishermen's interpretation is reinforced by *Oppenheim v. Campbell*, the case on which *Wind River* was explicitly based. 571 F.2d 660. In that case, the D.C. Circuit dismissed a challenge to an old final agency action as time-barred but not a second claim challenging a more recent final agency action. *Id*. at 663. As the court explained:

> Appellee's cause of action under the APA is entirely distinct from the cause of action we have found to be barred by the statute of limitations. Appellee could have brought the first without reference to the second. The two also seek different relief: the first seeks to set aside recent arbitrary agency action, the latter seeks to recover compensation from the United States for wrongs suffered long ago.

*Id*.

The fishermen's challenge to the 2012 Rule is similarly distinct from any challenge that could have been brought against the 1987 Regulation. First, the 2012 Rule can be challenged without reference to the 1987 Regulation. The fishermen do not contend that the 2012 Rule violates the APA *because* the 1987 Regulation does so. *See Cedars-Sinai*, 177 F.3d at 1129 (challenging an agency decision for relying on an earlier, *procedurally* defective regulation). The statute of limitations would bar such an action because it would not allege any violation of the APA in the adoption of the 2012 rule. *See id.* Here, however, they argue that the Service violated the APA in adopting the 2012 Rule because, by terminating Public Law 99-625's protections, it exceeded its statutory authority. That may mean that the 1987 Regulation *also* exceeded the Service's authority, but that is not necessary for the fishermen to succeed in their challenge to the 2012 Rule.

Second, the fishermen's claim seeks different relief than a challenge to the 1987 Regulation. The fishermen seek to have the 2012 Rule declared null and void and the statutory protections for them and their fishery restored. A challenge to the 1987 Regulation would have sought to have at least some part of that regulation rescinded.

**2.   The District Court's Interpretation of *Wind River*
     Is Inconsistent with the Text of the APA**

The Court below construed *Wind River* to foreclose review of final agency
actions where an agency has exceeded its statutory authority relying on an earlier
agency action, except in the particular examples given by the *Wind River* court; *i.e.*
the denial of a petition to rescind and an enforcement proceeding.  ER at 13-15.
This interpretation unnecessarily divorces *Wind River* from the APA's language.  An
agency can be challenged for exceeding its statutory authority in a challenge from a
petition denial or an enforcement proceeding *because* each is a final agency action,
challenged on grounds that they violate the APA by exceeding the agency's statutory
authority, and were brought within six years of the date that they became final.  5
U.S.C. § 704; 28 U.S.C. § 2401(a).  This Court has never expressly said so, but the
Fifth Circuit, which follows *Wind River*, has.  *Dunn-McCampbell Royalty Interest,
Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287-88 (5th Cir. 1997) ("Although the *Wind
River* Court never said so explicitly, the court treated the agency's denial of that
petition as a 'final agency action' sufficient to create a new cause of action under the
APA.").

Although addressing the statute of limitations under a different statute, this
Court's *Oregon Trollers Association v. Gutierrez* illustrates why dismissal was
improper here.  452 F.3d 1104 (9th Cir. 2006).  That case concerned the application

of the Magnuson Act's 30-day statute of limitations period to a challenge to a fishery management plan on the grounds that it and the older regulation on which it relied violated the statute. *Id*. at 1112. The federal government moved to dismiss, arguing that the challenge should have been brought within the time for directly challenging the regulation. *Id*. This Court rejected that argument because the Magnuson Act does not only allow challenges to regulations, but to "actions." *Id*. at 1113. Because the claim had been filed within 30 days of the adoption of the 2005 plan, this Court explained, "as a straightforward textual matter, a petition filed within 30 days of the publication of an action may challenge both the action and the regulation under which the action is taken." *Id*.

Like the Magnuson Act, the APA allows challenges to final agency actions, not just regulations. 5 U.S.C. § 702. The 2012 Rule was a final agency action subject to challenge as exceeding the Service's statutory authority. If the interpretation given to *Wind River* by the Service and the court below were correct, this Court did not faithfully apply the statute of limitations provision in that case but created an exception to the provision out of whole cloth. Neither *Wind River* nor any of the cases on which it relied suggest that this is what the Court was doing.

Defendants' argument would limit judicial review under the APA, contrary to congressional intent. When Congress wants to create the result that defendants seek, it does so expressly. For example, Congress provided, in the Surface Mining Control

and Reclamation Act, that any challenges to the substance of a regulation must be filed within 60 days after the regulation becomes final. 30 U.S.C. § 1276(a)(1); *see Nat'l Min. Ass'n v. U.S. Dep't of Interior*, 70 F.3d 1345, 1350 (D.C. Cir. 1995). After that time, the substance of the regulation can be challenged "solely on grounds arising after the sixtieth day." 30 U.S.C. § 1276(a)(1); *Nat'l Min. Ass'n*, 70 F.3d at 1350. Congress did not limit review under the APA in this manner. *See* 28 U.S.C. § 2401.

### 3. The District Court's Interpretation Is Also Inconsistent with the Presumption That Agency Actions Are Subject to Judicial Review Under the APA

Finally, the Service's interpretation of *Wind River* contradicts the presumption that agency actions are judicially reviewable. *Sackett*, 132 S. Ct. at 1374. The Supreme Court has explained that this presumption is based on the legislative history of the APA, which "manifests a congressional intention that it cover a broad spectrum of administrative actions" and that its "'"generous review provisions" must be given a "hospitable" interpretation.'" *Abbott Labs. v. Gardner*, 387 U.S. 136, 140-41 (1967) (quoting *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955)). Construing *Wind River* to restrict the types of final agency actions that can be challenged as exceeding an agency's authority would not be an hospitable interpretation of the APA.

The interpretation would also threaten to shield entirely from judicial review some agency decisions.[1]  Here, the Service merely asserted the authority to violate Public Law 99-625 in the 1987 Regulation.  The Service did not actually exercise that authority until it adopted the 2012 Rule.  Therefore, *no one* was injured or had standing to challenge the 1987 Regulation on the grounds that it exceeded the Service's authority.

Additionally, the 1987 Regulation was not the culmination of the Service's decision to exceed its authority.  *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186-88 (4th Cir. 1999) (an agency action is final once there is "no obvious factual contingency" that puts the APA violation seriously in doubt).  There were numerous factual contingencies that would have made a claim that Public Law 99-625 would be violated purely speculative, including:  (a) the failure criteria might never be satisfied; and (b) if the failure criteria were applied and satisfied, the Service might decide not to terminate the protections anyway.  *See* 52 Fed. Reg. 29,754.  In light of these contingencies, any injury or APA violation would have been purely speculative during the time for challenging the 1987 Regulation.  As a result, the Service's theory would mean that the decision to violate Public Law 99-625 could

---

[1]   Subsequent to the dismissal, the Service has, contrary to *Wind River*, taken the position that the fishermen may not challenge the 1987 Regulation and the 2012 Rule by filing a petition to rescind.  *See* Request for Judicial Notice, Exhibit A.  If the Service's theory is correct, its decision to violate Public Law 99-625 can never be challenged.

never have been challenged. By merely asserting an authority the agency doesn't have, which no one could challenge, it would immunize its subsequent decisions to exercise that authority from judicial review.

## CONCLUSION

On December 19, 2012, the Service finalized a rule terminating the sea otter management zone and exposing fishermen to potential criminal liability for pursuing their livelihoods. Less than eight months later, Appellants filed this action challenging that rule as inconsistent with Public Law No. 99-625. Since this action was filed within six years of the publication of the rule in the Federal Register, it cannot be dismissed on statute of limitations grounds and the decision below should be reversed.

DATED: September 19, 2014.

Respectfully submitted,

DAMIEN M. SCHIFF
JONATHAN WOOD

By ____ /s/ Jonathan Wood _____
    JONATHAN WOOD

Counsel for Plaintiffs - Appellants

## STATEMENT OF RELATED CASES

Appellants are aware of no related cases within the meaning of Circuit Rule 28-2.6.

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE
REQUIREMENTS, AND TYPE STYLE REQUIREMENTS.

1.      This opening brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

  X    It contains 4,781 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii), or

     It uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This opening brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

  X    It has been prepared in a proportionally spaced typeface using WordPerfect X5 in font style Times New Roman and font size 14, or

     It has been prepared in a monospaced typeface using WordPerfect X5 with _____ characters per inch and type style _____.

DATED: September 19, 2014.


  /s/ Jonathan Wood_____
Attorney for Plaintiffs - Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

_____/s/ Jonathan Wood_____

JONATHAN WOOD
