No. 14-55580

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CALIFORNIA SEA URCHIN COMMISSION, et al.,
Plaintiffs-Appellants,

v.

MICHAEL BEAN, in his official capacity as Acting Assistant
Secretary for Fish and Wildlife & Parks, Department of the Interior, et al.,
Defendants-Appellees

and

FRIENDS OF THE SEA OTTER, et al.,
Intervenors-Defendants-Appellees.

On Appeal from the United States District Court
for the Central District of California
Honorable Dolly M. Gee, District Judge

**OPPOSITION TO FEDERAL APPELLEES'
MOTION TO CONSOLIDATE THIS APPEAL WITH NO. 15-56672**

M. REED HOPPER
JONATHAN WOOD
   Pacific Legal Foundation
   930 G Street
   Sacramento, California 95814
   Telephone:  (916) 419-7111
   Facsimile:  (916) 419-7747
   E-mail: mrh@pacificlegal.org
   E-mail: jw@pacificlegal.org

Counsel for Plaintiffs-Appellants

On January 4, 2016, Federal Defendants-Appellees U.S. Fish & Wildlife Service, *et al.* ("the Service") moved to consolidate this appeal with a recently filed appeal of a separate case between many of the same parties, *California Sea Urchin Commission v. Bean*, No. 15-56672 ("Sea Otter II").[1] Plaintiffs-Appellants California Sea Urchin Commission, *et al.* ("the fishermen") respectfully request that the Court deny that motion. As explained more fully below, the appeals are not appropriate for consolidation because there is no overlap in the issues presented in them. Consequently, the Service's request that the Court delay further consideration of Sea Otter I (which is being considered for the Court's April 2016 oral argument calender) until Sea Otter II (which has not yet begun briefing) is set for oral argument would prejudice the fishermen by introducing further delay without any compensating conservation of judicial resources.

## BACKGROUND

Southern sea otters are listed as a threatened species under the Endangered Species Act. Determination that the Southern Sea Otter is a Threatened Species, 42 Fed. Reg. 2965, 2966 (Jan. 14, 1977). Concerned that the species' limited range made it vulnerable to a catastrophic oil spill, Congress enacted a statute authorizing the Service to establish a new population of otters far enough from the existing range that

---

[1] To avoid confusion due to the two cases' similar titles, this appeal (No. 14-55580) will be referred to as "Sea Otter I" and the other appeal (No. 15-56672) will be referred to as "Sea Otter II."

a single spill would not affect both. *See* Pub. L. No. 99-625, 100 Stat. 3500 (Nov. 7, 1986). That statute also mandated that, if the new population was established, the Service "shall implement" protections for the surrounding fishery and its fishermen. *See id.* § 1(d); *see also id.* § 1(b)-(c). A year later, the Service exercised its newly given authority by adopting a regulation providing for the establishment of the new population, implementing the mandated protections, announcing criteria by which the program would be judged a success or failure, and authorizing the Service to terminate the program if, according to these criteria, if had failed. *See* 52 Fed. Reg. 29,754, 29,781-84 (Aug. 11, 1987). Over the next several years, the Service moved otters to San Nicolas Island and implemented the statute's protections for the fishery and fishermen from Point Conception to the Mexican border.

In 2012, the Service applied its failure criteria and—because the population had not reached sufficient size within the first three years—determined that the program failed, rescinded the regulation establishing it, and eliminated the protections for the surrounding fishery and fishermen. *See* 77 Fed. Reg. 75,266 (Dec. 19, 2012). A few months later, the Fishermen brought this challenge to that decision, alleging that it was an ultra vires final agency action under the Administrative Procedure Act (APA) because it violated Public Law No. 99-625. *See* Excerpts of Record (ER) at 21-38, ECF No. 9-2.

However, that question is not at issue in this appeal because the court below dismissed the case on statute of limitations grounds. *See* ER at 4, 5-16. Consequently, the only issue before the Court in Sea Otter I is whether an APA claim challenging a recent final agency action is nonetheless time barred if the legal theory on which it's based would imply that earlier agency actions were also illegal.[2] *See* Answer Br., ECF No. 19. This appeal has been fully briefed for more than a year and is being considered for the Court's April 2016 oral argument calendar. *See* ECF No. 30.

After Sea Otter I was dismissed on statute of limitations grounds, three of the plaintiffs[3] filed a petition under the APA, seeking the repeal of the decision to terminate the program and the 1987 regulation's failure criteria. That petition was denied and the plaintiffs in Sea Otter II filed suit, arguing that the denial of their rulemaking petition was ultra vires final agency action under the APA because Public Law No. 99-625 compels the Service to implement the statute's protections for the fishery and fishermen. The district court granted summary judgment to the Service on several grounds, including (a) the plaintiffs lack standing to challenge the denial of

---

[2] The APA's statute of limitations is 6 years. The fishermen filed this challenge well within that deadline to challenge the 2012 termination of the program. The Court below, however, ruled that the claim was too late because the Service first asserted the authority to terminate the program in the regulation adopted in 1987. *See* ER at 4, 5-16.

[3] The California Lobster and Trap Fishermen's Association are a party to Sea Otter I only.

- 3 -

the petition; (b) the petition was improper under the APA; and (c) the statute gave the Service the authority to terminate the program and its protections for the fishery. That decision has been timely appealed and briefing is scheduled to begin on April 5, 2016.

## ARGUMENT

The Service argues that this Court should delay consideration of this case because Sea Otter I and Sea Otter II are related cases and, in its view, consolidation would conserve judicial resources without prejudicing any party. However, the two appeals are likely not related. And, even if they are, this would not justify the Service's requested consolidation. Because there is no overlap between the issues currently before the Court in the two cases, the requested consolidation wouldn't conserve judicial resources and would prejudice the fishermen by unnecessarily delaying resolution of this appeal.

## I

## THE TWO APPEALS DO NOT RAISE
## THE SAME OR CLOSELY RELATED ISSUES

Contrary to the conclusory statements in the Service's motion, the Sea Otter I and Sea Otter II appeals do not raise the same or closely related issues. *See* ECF No. 32, 6-7; *cf.* Cir. R. 28-2.6(c) (cases are deemed related if they "raise the same or closely related issues"). This appeal raises only one issue: whether a timely APA challenge to a final agency action should nonetheless be dismissed as time barred if

the legal theory underlying it would call an earlier final agency action into doubt. *See* Reply Br., ECF No. 22; *see also Center for Biological Diversity v. Salazar*, 695 F.3d 893, 904-05 (9th Cir. 2012) (it shouldn't).

The Sea Otter II appeal does not raise this issue or any question closely related to it. Instead, it asks: (a) whether fishermen organizations have standing to challenge the denial of their petition seeking the repeal of regulations that threaten them with criminal punishment for pursuing their occupation and threaten their fishery with predation; (b) whether petitions to amend or repeal a regulation under the Administrative Procedure Act are invalid if they use the word "rescind" rather than "amend" or "repeal," *see* 5 U.S.C. § 553(e); and (c) whether the petition denial conflicts with Public Law No. 99-625. The Court's ultimate resolution of those questions will not inform the resolution of the question presented in this appeal—and vice versa.

In its motion, the Service argues that the cases are related because, if this appeal succeeds, any remand would raise the question of the proper interpretation of Public Law No. 99-625, a question also raised by Sea Otter II. *See* ECF No. 32, at 6-7. Even assuming that this is sufficient to render the cases related under Circuit Rule 28-2.6, that tenuous connection doesn't justify consolidating these appeals.

## II

## THE TWO APPEALS DO NOT CHALLENGE
## THE SAME UNDERLYING FINAL AGENCY ACTION

The Service also asserts that the cases are related because they involve the same transaction or event. *See* ECF No. 32, 6-7; *cf.* Cir. R. 28-2.6(d) (cases are deemed related if they "involve the same transaction or event"). This is incorrect. Sea Otter I and Sea Otter II are APA challenges to two distinct final agency actions. Sea Otter I challenges the adoption of the rule terminating the program. Sea Otter II challenges the Service's denial of the fishermen's APA petition. These are two separate events, each of which is challengeable under the APA. *See* 5 U.S.C. § 704.

## III

## DUE TO THE LACK OF OVERLAP IN THE TWO
## APPEALS, THE REQUESTED CONSOLIDATION
## WOULD NOT CONSERVE JUDICIAL RESOURCES

The Service asserts, without explanation, that consolidation would conserve judicial resources. *See* ECF No. 32, 6-7. This assertion is incorrect. Because there is no overlap between the issues actually presented in the two appeals, consolidation likely wouldn't conserve judicial resources.

The facts and legal arguments that will inform the resolution of the statute of limitations issue in this appeal are irrelevant to Sea Otter II. Whether this case was

timely filed simply has no bearing on the Sea Otter II plaintiffs' standing, the validity of their petition, or the underlying merits.

The same is true in reverse. The facts and legal arguments that will inform the resolution of the standing, APA petition, and statutory interpretation questions at issue in that case are irrelevant to this Court's resolution of this one. Whether the plaintiffs in Sea Otter II have standing to challenge the denial of their petition will have no effect on the resolution of this appeal, in which standing has not been contested and the grounds on which Sea Otter II was decided below are not present. Nor will this case be impacted by how the Court interprets the APA's right to petition in Sea Otter II, since this case doesn't involve an APA petition.

The proper interpretation of Public Law No. 99-625 would only be at issue in subsequent proceedings in this case if the fishermen prevail in this appeal. Otherwise, that issue will never arise in this case. But, assuming the Court reaches that issue in Sea Otter II,[4] the resolution of that issue will not inform the resolution of the statute of limitations issue in this appeal.

Since there's no overlap in the issues actually presented in the appeals, delaying further proceedings in Sea Otter I pending Sea Otter II wouldn't serve to conserve judicial resources. To the contrary, it could tax judicial resources by overly

---

[4] If this Court agrees with the court below that the plaintiffs in Sea Otter II lack standing to pursue their challenge, it won't have jurisdiction to reach the statutory interpretation issue.

- 7 -

complicating both appeals, since they concern different final agency actions, raise completely different legal issues, and are in different procedural postures.[5]

## IV

## UNNECESSARILY DELAYING RESOLUTION OF THIS CASE WOULD PREJUDICE THE FISHERMEN

The Service's requested consolidation would prejudice the fishermen by further delaying resolution of this appeal. Whereas the Sea Otter II appeal has only just been filed, this appeal has been pending for nearly two years. This case has been fully briefed for more than a year and is being considered for the April 2016 oral argument calendar. If this case's time line is any indication, Sea Otter II likely wouldn't be considered for oral argument until Summer 2017. Consequently, the Service's request that the two appeals be consolidated for purposes of oral argument would entail substantial delay in Sea Otter I.

This delay is particularly unjustified in light of the fact that, according to the court below, there's no jurisdiction to reach the underlying merits in Sea Otter II. If this Court agrees, the underlying merits couldn't be reached by this Court until (assuming this appeal succeeds) Sea Otter I is resolved on remand and the case appealed again. The requested consolidation would ensure that wouldn't happen until several years later than it otherwise could without consolidation.

---

[5] Whereas this case was dismissed on the pleadings, Sea Otter II was decided on summary judgment based on an administrative record.

The Service dismisses this concern by speculating that, if this appeal succeeds, the district court on remand would stay further proceedings pending resolution of Sea Otter II. *See* ECF No. 32, 7. Although this *could* happen, it's by no means inevitable. Alternatively, the court below could agree with the district court's decision in Sea Otter II and promptly award summary judgment to the Service. Or the court below might disagree and award summary judgment to the fishermen. Either result would allow the case to be appealed where it could then be consolidated with Sea Otter II (since the appeals would then raise the same issue).[6]

## CONCLUSION

For the foregoing reasons, the Fishermen request that the Court deny the Service's motion to consolidate these appeals.

DATED: January 6, 2016.

Respectfully submitted,

M. REED HOPPER
JONATHAN WOOD


By _____/s/ Jonathan Wood_____
     JONATHAN WOOD

Counsel for Plaintiffs-Appellants

---

[6] In terms of conserving judicial resources, this would likely be the best outcome, as it would ensure that the Court could reach the merits of the underlying statutory interpretation dispute, irrespective of whether the plaintiffs in Sea Otter II have standing.

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


     /s/ Jonathan Wood     
JONATHAN WOOD